**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>ZACHARY TYLER BENNETT,<br>SSN:  xxx-xx-2014,<br>BRITTANY LYNN BENNETT,<br>SSN:  xxx-xx-8659,<br><br>     Debtors. | Case No. 25-11932-JGR<br>Chapter 7 |
| LEANN T. COPELAND,<br><br>     Plaintiff,<br>v.<br><br>BRITTANY LYNN BENNETT,<br>ZACHARY TYLER BENNETT,<br>GRACEFUL STEPS DANCE STUDIO LLC,<br><br>     Defendants. | Adv. Pro. No. 25-01155-JGR |

**OPINION AND ORDER**

This adversary proceeding arises from a personal loan between friends to start a dance studio business.  The dance studio business failed, the loan wasn't repaid, and the borrower filed a chapter 7 bankruptcy case.  Plaintiff Leann T. Copeland ("Copeland"), being self-represented, filed a complaint for a non-dischargeable debt against Debtor Defendants Brittany Lynn Bennett ("Bennett") and Zachary Tyler Bennett on May 7, 2025.  The complaint named Graceful Steps Dance Studio LLC, a non-debtor entity, as a Defendant.  The company has not filed bankruptcy and is not seeking a discharge.  The Court does not have personal or subject-matter jurisdiction over Graceful Steps Dance Studio LLC.  The Debtor Defendants answered on June 23, 2025, the litigation advanced without the inclusion of Graceful Steps Dance Studio LLC, and the Court conducted an in-person trial on March 25, 2026.

**BACKGROUND**

(i)     Complaint and Answer

The Complaint to Determine Dischargeability (Doc. 1, pp. 7-10; "Complaint") contained two claims for relief for a non-dischargeable debt in the amount of $27,060.  The first claim for relief was for actual fraud under 11 U.S.C. § 523(a)(2)(A) and the second claim for relief was for a willful and malicious injury under 11 U.S.C. § 523(a)(6).  The Complaint does not allege Debtor Zachary Tyler Bennett was involved in the loan transaction.

The relevant portions of the Complaint allege:

4. On October 23, 2023, Plaintiff loaned the Defendant $20,000, for business purposes.

5. The loan was made based on representations of repayment ability and intent.

6. Defendant failed to repay, and Plaintiff filed a civil action in Colorado District Court, Case No. 2025CV26 for breach of contract and fraud.

7. Upon information and belief, Defendant never intended to repay the loan, or made material misrepresentations to induce Plaintiff to extend credit.

8. Defendant obtained the loan by false pretenses or actual fraud.

9.   Therefore, the debt is not dischargeable under § 523(a)(2)(A).

10. Defendant's misuse or diversion of funds was done willfully and maliciously, causing financial harm.

11. The debt arises from willful and malicious injury and is non-dischargeable under § 523(a)(6).

Bennett filed a general denial answer.  She also defended the Complaint by asserting: (i) she was not liable on the debt because the promissory note at issue was executed by Graceful Steps Dance Studio LLC, not Bennett individually and (ii) the Complaint did not adequately plead fraud with the requisite level of particularity because it merely set forth bare conclusions.  The parties submitted pre-trial statements prior to the trial.

At the trial, the Court admitted Plaintiff's Exhibits 1 through 11, filed at Doc. 47 on January 23, 2026.   The promissory note is attached hereto as Exhibit 1.   Copeland represented herself at the trial at which Copeland and Bennett testified.

(ii)      Witness Testimony

Since Copeland represented herself at the trial, the Court allowed her to testify in a narrative form.  She testified that she met Bennett through Bennett's mother, and they became friends.  Bennett told Copeland of her dream of owning a dance studio.  Bennett showed her a business plan for the dance studio that she was taking to the bank for a start-up loan.  Bennett also showed Copeland banners and designs for the proposed studio. Bennett told Copeland she needed money to open the studio and was waiting for a settlement from a car accident to partially fund the business.  Copeland testified Bennett gave her a "spiel on the presentation of the business".   Copeland testified that Bennett told her that Copeland could be an employee in the future.  Copeland was interested in part because her granddaughters were interested in dance, and they would attend the school.

Copeland stated that Bennett prepared the Promissory Note (Exhibit 1) and that she wrote a check in the amount of $20,000 to fund the loan.  She did not believe any attorneys were involved in the preparation of the Promissory Note.  The note was signed on October 23, 2023, and Exhibit 4 shows the funds were advanced from Copeland to Graceful Steps

Dance Studio LLC on the same date.  Copeland said she used a cash advance on her Discover credit card to fund the loan.  She also testified the business was not yet open on that date and she assisted in starting the business by buying pizza and a shop vac.  She testified she helped open the studio by assisting in the installation of a tile dance floor with chairs but was not present at the grand opening in February 2024.  She stated that Bennett was creating a "beautiful business."  Copeland said she paid for monthly classes for her granddaughters and, "really enjoyed being there."

The terms of the Promissory Note called for monthly payments in the amount of $700 beginning on November 15, 2023, for a term of two years and 9.55 months at an 11.5% interest rate.  Copeland was not aware of whether Bennett used the proceeds of the loan for the business.  The business subsequently opened, and Copeland received three payments of $700 in October and November 2023 and one in January 2024 and one cash payment of $600 in May 2024, on the Promissory Note for a total of $2,700.  There was no evidence of the identity of the party who made these payments.  Exhibit 8 is a series of texts between the parties evidencing Copeland's efforts to collect the monthly payments and Exhibit 11 is an itemization of some of Copeland's damages.  Ultimately, the dance studio business closed in December 2024.

Copeland was unable to identify any false statements made by Bennett to induce her to make the loan and admitted the loan contained an integration clause.  Copeland did not know if Bennet used the proceeds of the $20,000 loan for anything other than the dance studio business.  Copeland admitted there were four payments made on the loan.  She testified the creation of Promissory Note and its terms were Bennett's idea and she believed Bennett not Graceful Steps Dance Studio LLC was the borrower under the Promissory Note.

Copeland was a credible witness.  She found out through Facebook that the dance studio closed in December 2024.  She had never loaned money before and, unfortunately, the dance studio business failed in ten months.

Bennett testified she used ChatGPT to create the Promissory Note and that it was her intent that Graceful Steps Dance Studio LLC was to be the borrower.  The Promissory Note was a form which contained blanks and Bennett filled in the terms of the loan, including the amount, term and interest rate.  She testified she never made any false factual statements or promises to Copeland to induce her to make the loan, either orally or in writing.  Bennett said the proceeds of the $20,000 loan were all used in the business along with loans from her husband, aunt, and the Small Business Administration to start the business.  The money was used to purchase three specialty floors which cost $16,000, water bottles, leotards, computers, a video camera, security systems, and for tenant finish, rent, and a rent deposit.

Bennett tried to save the business by borrowing money from her mother in 2024.  She stated she was not a main dance instructor and the business failed because it did not generate enough income to "sustain the business."  There was no cross examination.  Bennett was a credible witness.

## ANALYSIS

## Dischargeability Under 11 U.S.C. § 523(a)

This Court has subject matter jurisdiction over this core matter to determine the dischargeability of a particular debt pursuant to 28 U.S.C. § 157(a) and (b)(2)(I).

3

The dischargeability of claims under 11 U.S.C. § 523(a) involves a two-part analysis. The first step requires "the bankruptcy court [to] determine the validity of the debt under applicable law." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (B.A.P. 10th Cir. 2016). The second step is a determination of whether the debt is excepted from discharge under the applicable section of 11 U.S.C. § 523(a). *Id.*

The burden of proof for claims under 11 U.S.C. §523 is a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). However, exceptions to discharge are narrowly construed. In furtherance of the fresh start objective of bankruptcy, doubts are resolved in favor of debtors. *Belkco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

## 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides, in pertinent part, that a Chapter 7 debtor is not discharged from any debt for money or an extension of credit to the extent that such debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Under 11 U.S.C. § 523(a)(2)(A), a debt obtained by false pretenses or a false representation is not dischargeable when a creditor proves:

> (1) the debtor made a false representation; (2) with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor.

*In re Denbleyker*, 251 B.R. 891, 895 (Bankr. D. Colo. 2000) (citing *Field v. Mans*, 516 U.S. 59, 71 (1995)); *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

Fed.R.Civ.P. 9(b), as incorporated by Fed.R.Bankr.P. 7009, states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of an alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind. *Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1252 (10th Cir. 1997).

## 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) provides that a Chapter 7 debtor is not discharged for willful and malicious injury by the debtor to another entity or the property of another entity. The

creditor must establish that the conduct of the debtor was "willful and malicious" and caused an injury to an entity or the property of an entity.

Non-dischargeability under 11 U.S.C. § 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both*, an objection to discharge under that section must fail."). The United States Supreme Court has held that the term "willful" requires proof of a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998).

"[T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." *Id.* at 61-62.

The Tenth Circuit has held that "the term 'malicious' requires proof 'that the debtor either intend[ed] the resulting injury or intentionally [took] action that [was] substantially certain to cause injury.'" *Moore*, 357 F.3d at 1129 (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)). The Tenth Circuit Bankruptcy Appellate Panel determined the definition of "malicious" in *Moore* was *dicta* and applied a different standard to determine whether there is a malicious injury. *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 918 (B.A.P. 10th Cir. 2020). The totality of the circumstances must be examined to determine whether the act was performed without justification or excuse. The act must be wrongful. *Id*. at 919-20.

### (i)      Liability on the Promissory Note

Bennett claims she was not personally liable on the Promissory Note based on the language of the Promissory Note and because the $20,000 cashier's check for the loan was made payable to Graceful Steps Dance Studio LLC. Copeland claims she made the loan to Bennett personally and relied on Bennett's solemn promise to repay the loan.

An examination of the language of the Promissory Note reflects that although Graceful Steps Dance Studio LLC is identified as the borrower in the introductory paragraph, the signature line for the borrower on the second page is Brittany Bennett and the Promissory Note was signed by Brittany Bennett individually. However, the last sentence of the Promissory Note stated the borrower was "represented" by Brittany Bennett.

Thus, the identity of the borrower under the Promissory Note is subject to two different interpretations and is therefore ambiguous. The goal of the Court is to determine the intent of the parties. Copeland testified she believed Bennett was the borrower and Bennett testified she believed Graceful Steps Dance Studio LLC was the borrower. In analyzing the extrinsic evidence, while the Loan was made in the form of a cashier's check made payable to Graceful Steps Dance Studio LLC, Copeland's demand letters were directed solely at Bennett (Exhibits 8, 9 and 10). Additionally, Bennett did not list the debt owed to Copeland as disputed, contingent or unliquidated in her Schedule F in her bankruptcy case filed on April 7, 2025.

Colorado courts look to the intent of the parties as the primary means of resolving contract ambiguity.  When intent cannot be determined, Colorado cases apply the legal doctrine of *contra proferentem*, the principle of construing ambiguous language against the drafter.  *See Moland v. Indus. Claim Appeals Office*, 111 P.3d 507, 511 (Colo. App. 2004); *Lafarge N. Am. Inc. v. K.E.C.I. Colo. Inc.*, 250 P.3d 683, 691 (Colo. App. 2010).  Thus, in construing the Promissory Note against the drafter, Brittany Bennett, and since the party who executed the Promissory Note as borrower was Brittany Bennett, the Court finds that Brittany Bennett is liable on the debt.

(ii)     Dischargeability of the Debt

Neither the Complaint nor the evidence adduced at trial proved actual fraud.  The Court cited certain allegations of the Complaint to illustrate fraud was not pled with particularity as required by Fed.R.Civ.P. 9 incorporated herein by Fed.R.Bankr.P. 7009.  This heightened pleading standard is necessary because fraud allegations accuse someone of dishonesty and vague accusations can force expensive litigation before any real evidence of fraud is established.  The heightened standard preserves the integrity of the pleading process and gives defendants fair notice of the precise allegations against them.

Moreover, the Complaint does not even reference the five elements of an actual fraud claim.  It does not identity any material false statements or omissions, the facts underlying the intent to deceive, or whether there was justifiable reliance.

The evidence failed to establish Bennett made any materially false representations or omissions with an intent to deceive Copeland upon which Copeland justifiably relied.  Bennett started a business that Copeland enthusiastically supported, but the business, unfortunately, did not generate enough income to service its debts.  Bennett made sincere efforts to repay the loan.

Bennett's chapter 7 schedules identify a number of debts related to the failed business including the Small Business Administration, the business landlord and family members.  The Court concludes Bennett is an honest but unfortunate debtor entitled to a discharge of her debts.

Likewise, the Complaint only contains summary allegations that Bennett acted willfully and maliciously toward Copeland and there was absolutely no evidence at the trial to support this claim.  The evidence is that Bennett used the loan from Copeland in the business and made four payments on the loan before the business failed.

**CONCLUSION**

For the above reasons, IT IS HEREBY ORDERED:

Plaintiff's claim for relief under 11 U.S.C. § 523(a)(2)(A) is DENIED.

Plaintiff's claim for relief under 11 U.S.C. § 523(a)(6) is DENIED.

The Complaint is DISMISSED WITH PREJUDICE and the Clerk of the Court shall enter judgment accordingly, each party to pay his or her own costs and fees.

6

IT IS FURTHER ORDERED that the Clerk of the Court enter the discharge in the above-referenced chapter 7 case.

Dated:  July 1, 2026

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge